

1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  JAZZ MARRIE RAYMOND,          No. 2:13-CV-2033-JAM-CMK

12           Plaintiff,

13     vs.                FINDINGS AND RECOMMENDATIONS

14  COMMISSIONER OF SOCIAL
    SECURITY,

15          Defendant.

16

17  ————————————————/

18         Plaintiff, who is proceeding with retained counsel, brings this action under

19  42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20  Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's

21  cross-motion for summary judgment (Doc. 17).

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

## I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 3, 2011.  In the application, plaintiff claims that disability began on December 14, 1992.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 6, 2013, before Administrative Law Judge ("ALJ") William C. Thompson, Jr.  In a March 15, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1.  The claimant has the following severe impairment(s): borderline intellectual functioning;

2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.  The claimant has the following residual functional capacity: full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple, routine, and repetitive tasks and have occasional interaction with supervisors, co-workers, and the public;

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on August 9, 2013, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

2  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

3  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

4  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

5  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

6  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

7  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

8  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

9  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

10  Cir. 1988).

11

12  **III.  DISCUSSION**

13  In her motion for summary judgment, plaintiff argues: (1) the ALJ failed to

14  address the opinions of the agency non-examining medical sources; (2) the ALJ failed to

15  articulate sufficient reasons for rejecting the opinions of examining sources Drs. Wakefield and

16  Defreitas; and (3) the ALJ erred in concluding that plaintiff's impairments do not meet or

17  medically equal Listing 12.05C.[1]

18  A.  **Evaluation of the Medical Opinions**

19  The weight given to medical opinions depends in part on whether they are

20  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

21  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

22  professional, who has a greater opportunity to know and observe the patient as an individual,

23  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

24  _____

25  [1]  While plaintiff also states in her brief that she "strongly objects" to any inference defendant may suggest that she concedes to the ALJ's adverse credibility finding, she does not present any specific arguments as to credibility.  The ALJ's adverse credibility finding, therefore,

26  is not before the court.

1   (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

2   to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

3   (9th Cir. 1990).

4              In addition to considering its source, to evaluate whether the Commissioner

5   properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

6   in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

7   uncontradicted opinion of a treating or examining medical professional only for "clear and

8   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

9   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

10  by an examining professional's opinion which is supported by different independent clinical

11  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

12  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

13  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

14  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

15  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

16  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

17  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

18  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

19  without other evidence, is insufficient to reject the opinion of a treating or examining

20  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

21  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

22  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

23  see also Magallanes, 881 F.2d at 751.

24  / / /

25  / / /

26  / / /

4

1           1.     Non-Examining Sources

2          Plaintiff argues that the ALJ failed to give any consideration to the opinions of

3   two agency non-examining medical sources.  According to plaintiff: "The ALJ never analyzed or

4   discussed why he was not crediting the state agency opinions that Ms. Raymond's back condition

5   limited her to medium work."  Plaintiff cites first to an August 10, 2011, case analysis by agency

6   reviewing doctor Sadda V. Reddy, M.D.  Dr. Reddy concluded: "In summary, CE MSO of a

7   medium RFC with frequent postural limitations is appropriate considering chronic low back pain

8   with history of radicular symptoms."  Next, plaintiff cites a June 15, 2012, case review by Roger

9   Fast, M.D., who concluded: "I agree with and affirm the medium RFC."  Defendant argues:

10  "Here, to the extent that the ALJ failed to discuss the opinions of Dr. Reddy and Dr. Fast, this

11  error was harmless."

12         The Ninth Circuit has applied harmless error analysis in social security cases in a

13  number of contexts.  For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050

14  (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness

15  testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the

16  testimony, could have reached a different disability determination."  Id. at 1056; see also Robbins

17  v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at

18  1056).  Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004),

19  the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's

20  testimony.  Specifically, the court held:

21              However, in light of all the other reasons given by the ALJ for
                Batson's lack of credibility and his residual functional capacity, and in
22              light of the objective medical evidence on which the ALJ relied there was
                substantial evidence supporting the ALJ's decision.  Any error the ALJ
23              may have committed in assuming that Batson was sitting while watching
                television, to the extent that this bore on an assessment of ability to work,
24              was in our view harmless and does not negate the validity of the ALJ's
                ultimate conclusion that Batson's testimony was not credible.

25              Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

26

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education.  The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion.  See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing Batson, the court stated:  "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error."  See id. at 1162.  The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error.  In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record.  We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision.  Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue.  There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

> Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is flawed

(i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the <u>Batson</u> standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

At the outset, the court agrees with plaintiff that the ALJ erred in concluding that plaintiff could perform work at all exertional levels by failing to discuss, or even mention, the opinions of Drs. Reddy and Fast which limit plaintiff to medium work due to back problems. Considering next defendant's argument that the error is harmless, the court applies the <u>Stout</u> standard because, in essence, the ALJ provided no reasons for rejecting these doctors' limitation to medium work. Under this standard, the question is whether any reasonable ALJ, having considered the opinions of Drs. Reddy and Fast, could have limited plaintiff to medium work. If so, then the error cannot be considered harmless and must be corrected by the agency.

Defendant argues that the ALJ need not "mention every doctor by name" because it is only necessary for the ALJ to consider probative evidence. The court rejects defendant's suggestion that the opinions of Drs. Reddy and Fast, who examined the record at the request of the agency and concluded that plaintiff's back problems limit her to medium work, are not probative on the issue of plaintiff's residual functional capacity. To the contrary, their opinions directly address the question of plaintiff's functional capacity.

Next, defendant argues that the error is harmless because no ALJ considering the opinions of Drs. Reddy and Fast would have given them any weight. According to defendant:

> Here, the opinions of Dr. Reddy and Dr. Fast are internally inconsistent, i.e., they are not even supported by their own findings. Plaintiff's argument is that Dr. Reddy's opinion "limiting" Plaintiff to medium work due to a back impairment, however, the physical findings were benign; straight-leg raising was negative, the MRI was negative, gait was normal, flexion was normal, motor and sensory were normal, Plaintiff was engaging in normal activities of daily living (Tr. 32). The only thing supporting Dr. Reddy's opinion were findings of mild back spasm and tenderness (Tr. 32). The Commissioner submits that these findings did not support imposition of any limitations.

1    While defendant's summary of Dr. Reddy's August 10, 2011, case analysis is

2  accurate, defendant fails to note that Dr. Reddy also cited "history of radicular symptoms" in

3  support of the doctor's conclusion that plaintiff is limited to medium work.  Additionally,

4  defendant's argument only addresses Dr. Reddy's opinion.  Defendant fails to offer any analysis

5  as to Dr. Fast's June 15, 2012, case review, which is based on a review of the entire file.   Given

6  the arguments offered by defendant, the court declines to conclude that the opinions of Drs.

7  Reddy and Fast could not support imposition of a medium work restriction.

8    In any event, the analysis defendant offers and suggests this court adopt is exactly

9  the kind of analysis that is reserved for the agency in the first instance and that would have

10  happened in this case had the error plaintiff complains of not occurred.  The court finds that this

11  matter should be remanded to the agency to address the opinions of Drs. Reddy and Fast limiting

12  plaintiff to medium work.

13    2.    Examining Sources

14    Plaintiff argues that the ALJ failed to articulate sufficient reasons for rejecting the

15  opinions of examining sources, Drs. Defreitas and Wakefield.

16    As to Dr. Defreitas, the ALJ stated:

17    On July 14, 2011, Donna Defreitas, M.D., performed a consultative
      internal medicine evaluation of the claimant at the behest of the State
18    agency.  The latter complained of back pain for 2 or 3 months, but
      admitted she could perform personal care, do housework, vacuum, mop,
19    wash dishes, interact with friends, and dance (Ex. 12F1).  On examination,
      she had normal gait and range of motion in the back, negative straight leg
20    raising, tenderness and mild muscle spasm in the lumbar spine, signs of
      scoliosis in the thoracic spine (Ex. 12F3), and full muscle strength and
21    tone.  Dr. Defreitas diagnosed mild to moderate scoliosis and diminished
      reflexes in the right pattelar, suggestive of nerve compromise.  Dr.
22    Defreitas opined the claimant could perform medium work except she
      could frequently crouch and stoop (Ex. 12F4).  I give Dr. Defreitas'
23    opinion reduced weight.  X-rays and an MRI of the back showed no
      abnormalities, and the claimant reported activities that are not consistent
24    with the alleged severity of her pain.  Further, the claimant did not
      consistently complain of pain and did not complete her physical therapy,
25    suggesting her pain was not as great as she contends.

26  / / /

8

1   As to Dr. Wakefield, the ALJ stated:

2          On July 21, 2011, James Wakefield, Ph.D., performed a consultative
       psychological evaluation of the claimant at the behest of the State agency.
3       On examination, the claimant endorsed visual hallucinations of her
       grandmother, displayed deficient intelligence, judgment, and
4       concentration, and exhibited borderline and/or inconsistent memory,
       ability to perform calculations, and fund of information.  However, she did
5       not appear to respond to internal stimuli, had normal appearance and
       thought content, was cooperative and communicative, showed cheerful
6       affect, spoke clearly with minimally adequate verbal skills, was oriented,
       and endorsed "OK" mood (Ex. 13F2).  She tested with a full scale IQ of
7       68, in the deficient range, deficient delayed memory (Ex. 13F3), and poor
       performance on the Trails test.  However, she tested with much better
8       memory and perceptual motor skills on the final test.  Dr. Wakefield
       diagnosed mood disorder NOS, borderline intellectual functioning versus
9       mild mental retardation, and a Global Assessment of Functioning score of
       65, indicating mild symptoms or difficulties.  He opined that the claimant
10      could not handle finances, could perform simple, repetitive tasks (Ex.
       13F4), had limited and/or deficient ability to reason, concentrate, and
11      make decisions in her best interest, and had immature social functioning.
       Because Dr. Wakefield does not specify what functional limitations result
12      from her limited or deficient abilities, I cannot assess what weight to give
       his opinion, though I agree the claimant's borderline intellectual
13      functioning limits her to simple, routine, and repetitive tasks as
       demonstrated by Dr. Wakefield's testing and her school records.

14

15         The court finds no error with the ALJ's analysis.  Regarding Dr. Defreitas, the

16  ALJ properly discounted the doctor's opinion because it was supported at best by minimal

17  clinical findings.  Specifically, the ALJ noted the negative x-ray and MRI findings.  Regarding

18  Dr. Wakefield, while the doctor provided no specific opinions as to occupational imitations for

19  the ALJ to either adopt or reject, the ALJ accepted the limitations identified by Dr. Wakefield by

20  including appropriate non-exertional limitations in his residual functional capacity finding.  In

21  particular, the ALJ limited plaintiff to work involving simple, routine, repetitive tasks with only

22  occasional interaction with supervisors, co-workers, or the public.

23  / / /

24  / / /

25  / / /

26  / / /

### B.   Applicability of the Listings

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

Plaintiff argues that "the ALJ went out of his way to find that Ms. Raymond did not suffer from more than borderline intellectual functioning because he knew that so finding would require him to find her disabled under Listing 12.05C."  More specifically, plaintiff argues: "The ALJ stated that, although Ms Raymond tested with an IQ of 68 (which the ALJ never challenged so seemed to have accepted as a valid IQ score), Ms. Raymond did not have another impairment causing more than minimal functional limitations."  According to plaintiff, her back impairment, as well as her difficulties handling stress and changes in routine, constitute "another impairment" causing more than minimal functional limitations.

Because, as discussed above, the court finds that remand is necessary to allow the agency to consider in the first instance the opinions of Drs. Reddy and Fast that plaintiff is limited to medium work due to back problems, it is possible that plaintiff does in fact have "another impairment" such that re-evaluation of the application of Listing 12.05C is also warranted.

/ / /

/ / /

/ / /

/ / /

/ / /

### IV.  CONCLUSION

Based on the foregoing, the court concludes that this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.   Accordingly, the undersigned recommends that:

        1.       Plaintiff's motion for summary judgment (Doc. 14) be granted;

        2.       Defendant's cross motion for summary judgment (Doc. 17) be denied; and

        3.       This matter be remanded for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 5, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE